**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**BUCKEYE RETIREMENT CO., LLC, LTD.,**

    **Appellant,**

v.                                                                                           Case No.: 3:07-cv-617-J-16

**PETER R. OSTERMAN, JR.,**

    **Appellee.**

_____/

**ORDER**

**I.   Procedural and Factual Background**

Buckeye Retirement Co., LLC, LTD ("Buckeye") appeals the bankruptcy court's Judgment and Findings of Fact and Conclusions of Law entered in *In re* Peter Osterman, Jr., United States Bankruptcy Court, Middle District of Florida, Jacksonville Florida, Case No. 05-11381-3P7 (the "Judgment") and the Bankruptcy Court's Order Overruling Plaintiff's Objections to Defendant's Discharge (the "Discharge Order"), both entered on May 15, 2007.

Debtor, Mr. Peter Osterman Jr. ("Osterman"), is a married father of two grown sons and is currently employed at W&O Supply, Inc. ("W&O"), primarily in accounting and finance. W&O pays Osterman an annual salary of $216,764.60, with a varying annual bonus.[1] In addition, Osterman earns approximately $3,000.00 as a trustee of Intrepid Capital Fund ("Intrepid").

The undisputed facts show that Osterman is the former owner of ProJr., Inc., which did business until 2001 as LK Erectors ("LK Erectors"). Osterman acquired LK Erectors in April of 2000. He financed his acquisition with a $750,000.00 Small Business Administration Loan (the "SBA" and the

---

[1] Osterman earned a bonus of $80,240.00 in 2003; $92,840.00 in 2004; and acknowledged that his bonus for 2005 was more than the one he received in 2004. (Dkt. 6, pp. 4-5, n.4).

"SBA Loan") through Transamerica Small Business Capital ("Transamerica"). Osterman signed a personal guaranty for the SBA Loan. In late 2000, Osterman sold his business to a company owned by Mr. Billy K. Howard ("Howard"). Howard's company assumed the SBA Loan; however, as a condition of sale, the SBA required Osterman to retain his guaranty. Just after Howard acquired LK Erectors, he was seriously injured in an accident that left him incapacitated. Shortly after Howard's accident, LK Erectors defaulted on the SBA Loan. LK Erectors ceased doing business before the end of 2001, leaving a large balance on the SBA Loan. Osterman was aware that LK Erector's SBA Loan payments were delinquent in November 2001 and received formal notice to that effect in early 2002.

The Cadle Company acquired the SBA Loan and assigned it to its affiliate, Buckeye. Through counsel, Osterman attempted unsuccessfully to negotiate a settlement with Buckeye. In October 2004, Buckeye sued Osterman in state court for breach of guaranty. In November 2004, Osterman retained the services of his current counsel to "make sure that he understood all of his options and the implications of Buckeye's lawsuit." (Dkt. 8 at p. 12). Osterman and his wife have shared a joint bank account at Bank of America for the last twenty (20) years. On the advice of counsel, Osterman opened a separate "wage account" in November 2004, in order to have "a clear delineation of his wages as head of household." (Dkt. 8 at p. 12). Osterman filed for Chapter 7 bankruptcy on September 30, 2005. When Osterman filed his bankruptcy petition, he listed Buckeye's claim as a "disputed and contingent" unsecured claim. Osterman filed a Schedules and Statement of Financial Affairs on October 3, 2005, with his petition (the "Schedules"). Osterman filed multiple amendments to the Schedules.

Buckeye challenges certain transfers Osterman made in the year before he filed his petition for discharge:

> 1) the $38,000.00 transfer in June 2005, from Osterman's wage account to his wife, who then gave the money to their eldest son, Michael, as a down payment for the purchase of his first home;

2) the gifting, with his wife, of a 1998 Nissan Maxima and a 1999 Honda Accord to their sons, Adam and Michael respectively, in December 2004; and

3) the sale of jewelry to his wife's company, K&I Creative Plastics, Inc., for fair market value of $4,550.00 in August 2005 (the "Jewelry Sale").

Buckeye further challenges Osterman's omission of six items from the Schedules: (1) the $38,000.00 transfer; (2) Osterman's interest in a 1999 Mercedes Benz; (3) Osterman's interest in a joint bank account held with his college-age son, Adam, at the Bank of America (Acct. No. 0030 6208 1624); (4) the Jewelry Sale ; (5) Osterman's income from Intrepid; and (6) Osterman's income from W&O (collectively, the "Omitted Items").

## II.    Standard of Appellate Review

Because the district court sits in an appellate capacity when reviewing the determination of a bankruptcy court, the district court applies the same standards as do appellate courts when reviewing other cases. See Deramus v. Bank of Prattville, 180 B.R. 665, 667 (M.D. Ala. 1995). A bankruptcy court's conclusions of law are therefore reviewed *de novo*, requiring the district court to independently examine the law and to draw its own conclusions after applying the law to the facts, without regard for the decision of the bankruptcy court. See, e.g., Nordberg v. Arab Banking Corp., 904 F.2d 588, 593 (11th Cir. 1990); Reliance Ins. Co. v. Enstar Group, Inc., 192 B.R. 579, 580, n.3 (M.D. Ala. 1996). However, a bankruptcy court's findings of fact are reviewed under a "clearly erroneous" standard. See Nordberg, 904 F.2d at 593.

Bankruptcy Rule 8013 provides that "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." However, if the bankruptcy court is silent or ambiguous about an outcome determinative fact, then this Court must

3

remand the case back to the bankruptcy court for further review. *In re* Chase & Sandborn Corp., 904 F.2d 588, 593 (11th Cir. 1990). An Appellant is also entitled to an independent *de novo* review of all conclusions of law and the legal significance accorded the facts. *In re* Bicoastal Corp., 125 B.R. 658 (M.D. Fla. 1991).

**III. Discussion**

Buckeye objects to Osterman's discharge for bankruptcy based on 11 USC § 727(a)(2)(A), which reads in part:

> (a) the court shall grant the debtor a discharge unless . . .
> (2) the debtor, with intent to hinder, delay or defraud a creditor . . . has transferred, . . . or concealed, . . .
> (A) the property of the debtor, within one year before the date of the filing of the petition; . . . .

To sustain its objection under § 727(a)(2)(A), Buckeye must prove that:

1. a transfer or concealment of property has occurred;
2. the property transferred was property of the Debtor;
3. the transfer or concealment took place within one (1) year of the bankruptcy petition; and
4. the transfer or concealment was done with the actual intent to hinder, delay or defraud a creditor.

*In re* Ferrato, 156 B.R. 83 (Bankr. M.D. Fla. 1993); *In re* Sofro, 117 B.R. 745 (Bankr. S.D. Fla. 1990); *In re* McNamara, 89 BR. 648 (Bankr. N.D. Ohio 1988).

The first three elements are not in dispute. The only issue before the bankruptcy court was whether Osterman's actions evidenced the requisite intent to hinder, delay or defraud a creditor.

Buckeye also objects to the discharge pursuant to § 727(a)(4). In order to sustain this objection, the evidence must establish: (1) that Osterman made a false oath or account in connection with his bankruptcy proceeding; (2) and that such a false oath or account was fraudulently made. *In re* Chalik, 748 F.2d 616, 618 (11th Cir. 1984). In order to be fraudulent, the "oath" must have been made with a knowing intent to defraud creditors. Swicegood v. Ginn, 924 F.2d 230, 232 (11th Cir. 1991). The

4

omission of an asset from a debtor's schedules or failure to disclose a material transfer constitutes a false "oath" or account within the meaning of the statute. In order to sustain an objection to discharge, however, the misrepresentation must be both "material" and "fraudulent." Id.  The subject matter of the "oath" is material "if it bears on a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings or the existence and disposition of his property." In re Chalik, 748 F.2d at 618.  An omission or mistatement is "fraudulent" if such intent is established by either direct or circumstantial evidence or through a showing that the debtor completed his or her schedules with "reckless disregard for the truth."  In re Smith (Golden Star Tire, Inc. v. Smith), 161 B.R. 989, 992 (Bankr. E.D. Ark. 1993).

Whether argued under § 727(a)(2)(A) or (a)(4), the requisite intent rests essentially on the same proof elements, which may be established by the cumulative effect of the debtor's actions intending to hinder, delay or defraud creditors. In re Lunday, 100 B.R. 502, 508 (Bankr. D.N.D. 1989).  In addition, actual "intent to hinder, delay, or defraud a creditor may be imputed to a debtor where the debtor fails to make full disclosure of his liabilities in a petition for relief and omits assets of substantial value from the schedules." In re Sofro at 991; Crews v. Topping (In re Topping), 84 B.R. 840, 842 (Bankr. M.D. Fla. 1988) ("Only where the non-disclosed assets [are] of little or no value will such fraudulent intent not be imputed.").  As with all § 727 discharge actions, the moving party must demonstrate intent by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 287 (1991).

The parties' briefs filed here are lengthy and provide an exhaustive cataloging of the details of each of the three contested transfers and Omitted Items.  The briefs also document the bankruptcy court's findings of fact and conclusions of law as to each.  For the sake of brevity, the Court will not repeat that information here.  Review of the record reveals that the bankruptcy court's entry of the Judgment and Discharge Order in Osterman's favor was due, in large part, to its finding that

Osterman's testimony was credible. The bankruptcy court entered the Judgment and Discharge Order after conducting a four-day trial during which it had the opportunity to assess Osterman's credibility firsthand.

### Buckeye's Objection Under § 727(a)(2)(A)

Buckeye asks this Court to question the bankruptcy court's conclusions. Buckeye acknowledges that direct evidence is the best proof of intent to defraud, and calls the Court's attention to what it considers "direct evidence." However, Buckeye claims that Osterman's intent to defraud can be inferred from "circumstantial evidence." Courts use the following "badges of fraud" to determine whether intent can be inferred:

> (1) Lack of adequacy or consideration;
> (2) The family, friendship or close association between the parties;
> (3) The retention of possession, benefit or use of the property in question;
> (4) The financial condition of the party sought to be charged both before and after the transaction in question;
> (5) The existence of cumulative effect of a pattern or series of transactions or course of conduct by debtor after incurring debt, after the onset of financial difficulties or during pendency or threat of suit by creditors; and
> (6) The general chronology of events and transactions under inquiry.

*In re* Dudley R. Allen (Clark v. Allen), 210 B.R. 861, 867 (Bankr. M.D. Fla. 1997). In support of its argument Buckeye chronicles what it calls "direct evidence" of intent to defraud as to each of the three transfers. Buckeye further claims that the bankruptcy court failed to consider "uncontradicted" evidence pertaining to the "badges of fraud necessary to determine intent." (Dkt. 6 at p. 12). Based on the evidence presented, Buckeye concludes that "[d]espite direct evidence of intent to defraud and no less than four of the six badges of fraud, the [bankruptcy court] found no intent to defraud by Osterman. That decision was clearly erroneous." (Dkt. 6 at p. 18, citing to *In re* Sternberg (U.S. v. Sternberg), 229 B.R. 238, 247 (S.D. Fla. 1998) (reversing bankruptcy court's granting of discharge of tax liabilities where it failed to take badges of fraud into consideration)).

6

Osterman responds that the bankruptcy court found that the questioned transfers were not done with the intent necessary to defraud creditors and this factual conclusion is entitled to deference. Osterman claims that Buckeye's evidence was already considered by the bankruptcy court and given appropriate weight.

Buckeye's citation to Sternberg reveals one of the main flaws with its argument. In Sternberg the case was remanded because of the bankruptcy court's failure to take the "badges of fraud" into consideration. Here, it is clear from reading the Judgement that the bankruptcy court first found a legitimate and legal reason for Osterman's transfers. For example, the bankruptcy court found that the $38,000.00 transfer of funds from Osterman's wage account to his wife and, ultimately, his son for the purchase of a house was motivated by legitimate estate and gift tax reasons. Second, the bankruptcy court noted that Osterman retained no benefit, possession or use of the $38,000.00. Third, as Osterman notes, Buckeye failed to present any direct evidence to refute the bankruptcy court's findings. Instead, "Buckeye quarrels with the weight" the bankruptcy court placed on Osterman's (and his wife's) testimony and "disagrees" with the bankruptcy court's assessment of that testimony. The bankruptcy court engaged in this same three step detailed analysis for each of the three questioned transfers.

In an effort to provide what Buckeye defines as a "360 degree view" (or "totality of the circumstances") of Osterman's actions prior to filing for bankruptcy, Buckeye outlines Osterman's actions over a four-year period that it claims compel a finding of fraud. The focus in a § 724(a)(2)(A) inquiry is on transfers occurring within one (1) year of the bankruptcy filing. The bankruptcy court did not have to consider transfers prior to that time. In addition, the actions Buckeye relayed have nothing to do with the three transfers at issue. The Court has considered Osterman's actions, as catalogued by Buckeye, and finds that they are either irrelevant to its consideration or that they do not compel a

finding of fraud. Further, there is nothing in the record to substantiate Buckeye's claim that the bankruptcy court failed to consider this evidence.

In summary, and in accordance with the above example, the Court finds that the bankruptcy court's findings respecting Osterman's three questioned transfers are well supported by the record and include detailed analyses addressing the "badges of fraud" sometimes neglected in other cases. The bankruptcy court's credibility determinations are entitled to deference and are not "clearly erroneous."

**Buckeye's Objections Under § 727(a)(4)**

Buckeye objects to Osterman's failure to include the Omitted Items on his initial and amended Schedules. Buckeye claims that Osterman is a college educated individual with excellent legal representation, so while "mistakes are common, the number of 'oversights,' 'confusion,' and 'misunderstandings' Osterman admitted to at trial are not what you would expect from an honest debtor." (Dkt. 6 at p. 26). Buckeye further claims that "the omissions from Osterman's schedules and statement of financial affairs are particularly material given the fact that, in this case, there are no assets available to pay the claims of creditors. The value being substantial as compared to what was listed in the schedules made available to creditors, the lower court should have concluded that the omissions were done purposefully and with fraudulent intent." (Dkt. 6 at p. 28).

Osterman argues that the bankruptcy court rightly found that he gave credible explanations for each of the Omitted Items. In addition, Osterman notes that the omissions were corrected as soon as he learned of them and in all cases, save two (the joint bank account with Osterman's son Adam and additional income from Intrepid), and the corrections were made prior to the § 341 meeting of creditors held on November 18, 2005.

Buckeye's appeal on this issue also fails to establish that the bankruptcy court's findings were clearly erroneous. The record evidence supports the bankruptcy court's findings that Osterman's

failure to include the Omitted Items on the Schedules was anything other than inadvertent. Osterman's testimony on this issue convinced the bankruptcy court that the omissions were based on mistake or oversight and were willingly corrected, with two noted exceptions, prior to the § 341 meeting. Because Buckeye has not met its burden, the Court ends its inquiry here without discussing the materiality of the Omitted Items.

**IV.    Conclusion**

Based on the above, it is **ORDERED** that the Judgment and Discharge Order are **AFFIRMED**.

**DONE and ORDERED** in Chambers in Jacksonville, Florida on this 8th day of April 2008.

_____
JOHN H. MOORE II
United States District Judge

Copies to:  Counsel of Record